Good afternoon, counsel. The next case for today is 4-16-0-4-1-17, Pisani v. City of Springfield. And for the appellant, we have Mr. Craven. For the appellee, we have Mr. Zirkle. Is that correct? Yes. Am I pronouncing that correctly, sir? Yes. All right, thank you. You may proceed, Mr. Craven. Thank you, Your Honor. Members of the court, counsel, Don Craven for the appellant. This case involves an ordinance first approved by the City Council in 2003 and then rescinded in 2015. The ordinance approved in 2003 was at that time referred to as a retirement incentive or a retirement enhancement. And it was specifically designed to allow city employees to sell back the vacation time that they had earned for the explicit purpose of raising their salaries in that period of time for the calculation of their pension benefits. There was no sunset provision. There was no expiration. That was drafted to last forever. In 2003, the city loved the idea. It was a transition period between administrations, and this ordinance allowed senior members of the former administration to retire and also allowed other lower-level employees to raise their salaries for purposes of their pensions and allow them to retire. Fast forward to 2015, and that desired retirement incentive became a dreaded pension spike because in the period between 2013 and 2015, the city determined through required payments to IRRF exactly how much this retirement incentive was costing. So in 2015, the city undid the changes in the ordinance that is at issue in this case. The city undid the changes to the pension calculation formula. It changed back from the calculation of salary, eliminating the vacation pay incentive. It is our position that that attempt to change a direct variable in the pension calculation formula is unconstitutional as contrary to the Pension Protection Clause, which on its face applies to retirement systems of the state and any unit of local government. The direct changes to the pension formula in other cases have been declared unconstitutional as well. Enright pension reform involved five changes to the formula, including the institution of a minimum retirement age and a cap on salary. Direct variables in the formula, and the Supreme Court obviously struck down those changes. The Crouse case changed the calculation of salary for a firefighter taking a disability option. Once on disability, you have the option of retiring, and that change in the statute changed the formula from one half of salary at the time of retirement to one half of the salary at the time that the firefighter went on disability. It could be a period of years, and it's obviously detrimental to the employee. That was held unconstitutional as a change to a direct variable in the pension calculation. The Felt case involved changes to the pension calculation for judges, changing from imposing as part of that formula the salary on the last day of service to the average salary over the last year, denying judges the opportunity to retire the day after the General Assembly made a pay increase effective, which was a fine tradition for many, many years. But the court found that that was a change to a direct variable in the pension calculation and unconstitution. The same result obtains here. This was an ordinance designed to enhance salary for the purpose of pension calculations, and that change became a part of the pension contract between the city and each employee of the city on the effective date of that ordinance or for employees who came on afterwards, employees on their first day of employment with the city. In re-pension reform makes clear that the pension benefits in place on day one of employment are vested and cannot be diminished or impaired. They're protected by the Pension Protection Clause. Section 46, or paragraph 46 in the Kenerva decision, talks about pension benefits being a contract between the employee and the employer. And in this case, that ordinance and that opportunity extended to city employees became part of the contract in 2003 and for each employee hired after 2003. Mr. Craven, let me ask you a question. You mentioned in re-pension reform, and in that case, they focused on the fact that the benefit flowed from membership in one of the state's pension systems. Do we have that here? Yes. How so? Because the calculation of salary is defined by the statute and the IMRF regs and city code. The IMRF regulations limit what can be defined as what can be included as salary, the discussion of the so-called 125 percent rule. This ordinance was designed to allow salary to be calculated because the 125 percent rule prohibits increases over that amount in the last three months. This was specifically designed to be four months to 12 months out from retirement to comply with the IMRF regulations. But here we have a situation where people who are employed by the city of Springfield were entitled to take advantage of this, but it wasn't necessarily based on you being a member of IMRF, correct? Every IMRF member could not take advantage of this. Every city employee who could take advantage of it was a member of IMRF. The benefit flows only because of your membership in IMRF compliance with those regulations, and it's those regulations and the contract between the employee and the employer, in this case the city, that defines what salary is. It comes from nowhere besides IMRF and that contract. So then how is it that some IMRF members could not take advantage of it? Because the city, and I'm going to make one up, so God help me, I'm right. The city of Joliet doesn't have this arrangement with its employees. IMRF, in their amicus brief, notes that the decision to include this as salary is entirely within the discretion of the city, but it is that contract between the city and its employees that form the basis of the application and the pension flowing from IMRF. And another question I have is, how did this change, if it did, a fixed variable in the pension formula? Because for retirees who retired subject to this ordinance. With the benefit of this ordinance. There are employees, for instance, who saved their vacation time for the purpose of being able to cash it out to enhance their pensions at the time of retirement. I've already forgotten what your question is. I was asking how it changed a fixed variable in the pension formula, and what I'm getting at is, does it change the variable, or does it change maybe what we plug into the formula? Is there a distinction there? It changes the calculation of salary for these employees, just as the change in Crouse changed the calculation of salary for that applicant on disability, just as the change in the Felt case changed the definition and the calculation of salary for judges, just as the denial of, this is the change in the Budell case, changed the ability, tried to change the ability of Dr. Budell to take advantage of a military buyback credit at the time of retirement. And as in this case, in that case, the statute had been changed, and they imposed a deadline on when you could do that. That change in the statute, that change in the imposition of a deadline on when you had to apply for military buyback credits, could not constitutionally be applied to Dr. Budell. He was in the system, there was no deadline, and he was entitled to that benefit. It's a change in the definition and the calculation of salary, which in this case and in those other cases was a direct variable in the calculation. The city, as it should, relies on the Peters case, which changed the mandatory retirement age for firefighters and, firefighters or police officers, but perhaps both. But in Peters, age was not a direct variable in the calculation. The calculation of pension was based on the percentage of the monthly salary attached to rank at the time of retirement. How old you were didn't matter. It was, and as the Miller court noted, age was not a direct factor. And the language in Peters was that age had only an incidental effect on the calculation. The Miller case involved also a change in mandatory ages of retirement, but the calculation in Miller was dependent on age and was dependent on, because the salary, the formula was fixed at age 63.  It was not a direct factor in Peters. Peters, so that distinguishes Peters from this case. The Crouse case, which I mentioned earlier, also talks about incidental changes to, and talks about the Peters case, and incidental changes in the words of the Crouse court directed to another aim, but which has an incidental effect on pensions. Retirement ages for police and firefighters, it can be argued, is a matter of public safety. Firefighting and policing are young people's jobs, and public safety requires a lower retirement age. As a matter of fact, it was at one point required by both state and federal law. This change by the city, as made clear in the communications from city staff to the city council at the time, this ordinance, this change was proposed in 2015, wasn't designed to be an incidental change to pensions. It was designed only for the purpose of decreasing pension benefits payable to city employees and city retirees over the years. There's nothing in state law that prohibits what the city did. The IMRF brief makes reference several times to the debilitating effect of these pension payouts on cities, and the answer is relatively clear. If you don't want that effect, don't grant the benefit. But once you grant the benefit, once you change that contract, and once you sweeten that pension benefit between the city and its employees, it can't be diminished or impaired. For all those reasons, in the absence of any further questions, I would ask for reversal of the trial court and reserve my time for rebuttal. Thank you, Counsel. Mr. Zirkle? Jim Zirkle, Corporation Counsel for the City of Springfield. May it please the Court, Counsel. I wanted to just maybe try to answer a couple of the questions that were asked by the Court. The ordinance in question is not a benefit that is derived from the pension code. That's the fundamental flaw in the argument that the plaintiffs have made, they made in the circuit court and are making again today. The city ordinance is really an employee policy that the city has, and to put it a little bit in perspective, IMRF represents approximately 3,000 different entities, which is why this case has a certain concern with IMRF. You've got mosquito abatement districts, you've got sanitary districts, you've got water districts, municipalities, small cities, counties, library districts, et cetera, across the state. All of those have a myriad of employment policies, how they pay their employees, how they deal with overtime, how they deal with discipline, how they deal with union contracts, et cetera. If you apply literally what the plaintiff is trying to make an argument here, that those employment policies, the rate of pay, you know, discipline might be imposed, some of those different issues, then in effect what you would be doing is freezing in place the employment policies of all of those IMRF participating members, even though none of those members can change the IMRF pension code, they can't grant a pension, they can't do anything in connection with the IMRF process. And in this specific case, ironically the ordinance that was passed applies more than to just IMRF. It applied to police and fire. They're not part of IMRF. And so the concept, if you look at the real, right at the very crux of the plaintiff's argument, this is not a benefit that derives from the IMRF pension code. It is a local employment policy that the city adopted some years ago and has found to be too costly as a policy. And just to put it in perspective, if you look at what the IMRF amicus brief highlighted, and these were some of the arguments in court, if you take it in the circuit court or with local court, if you take it literally the city of Springfield had to do furlough days a few years back because of a bad budget situation. Under that argument, the city could not do furlough days because in theory it would have that incidental impact because you're reducing the income, the salary of the employee by forcing furlough days, which IE would then eventually impact the pension. So when you take it through the process, if the city were to enter into a labor contract granting 4% raises, subsequent to that with fire or police, subsequent to that negotiated a change to that contract for 2%. Under the argument the plaintiff's making, the city couldn't do that because once it was in place you could never stop it. And so that's the fundamental flaw that when you look at the argument and literally apply each of the cases that the plaintiff has argued, Canerva and so on, it's crystal clear that the court was not attempting to reach out to things outside of the pension code. And that's the critical distinction here. That's the distinction that happened in Peters. And when you read literally the vacation payout policy that the city council, the city of Springfield council adopted and subsequently modified, is not something that's dependent or in any way derived from the Illinois municipal retirement system pension code. It's a local ordinance. Does it make a difference here or do you agree with what Mr. Craven said that this benefit, we call it a policy or a change, has the express purpose of increasing the pension benefit of an employee? Which is different than furlough days, which does not have the express purpose of diminishing a benefit. Here it is to give workers the opportunity to enhance a benefit, and one would assume, and I think you can see, that when originally adopted, it was for the benefit of all. And then later it's determined to be not for the benefit of all, it's to the detriment of the city because of its cost. Does that make a difference? Two comments on that. Every single, in a broad way, every single policy that a municipality or any participant in IMRF regarding not only vacation, sick day application, payouts on sick days, payout on holiday pay, any of those ancillary things other than just salary impact the pension directly. And there's no doubt. Once you provide the opportunity to do the? Enhancement. Well, by virtue of adopting them, you've provided that enhancement. And what I'm going to say is I don't think it has? If you don't do it, it's not an enhancement. Well. Maybe some people like to take their vacation days. No, those who would accrue it, for example. No, you're exactly right. In other words, it depends on the employee's individual choice. Right. But to go back, I don't think that it matters or is a distinction under the KINERVA decisions, which was interpreting the Illinois Constitution regarding the in any way impacting, in a negative fashion, a preexisting pension benefit. This is not derived. For whatever reason, to save money, if the city of Springfield or the Springfield Park District or the Sangamon County said everybody has to take a 3% pay cut because our costs are too high and it's going to save us X millions of dollars in future pension costs. That does not invalidate that. That's something that a local government entity has to have the authority under its employment policies, even though it has an indirect impact. Because keep in mind that Springfield or any participant in IMRF does not change the pension calculation. It cannot award a pension. The city has no role in awarding a pension. It can't change the pension code. It can't change the variable in the code. So the city, in a way, its employees have the right to participate in it, but the city in no way can set the pension, affect the pension, change it. Like if we decide they should put more in. In other words, an employee should contribute more or should contribute less. The city has no say-so over that. That's a matter of state law. The local ordinances, the only thing they can do is affect local employees. For example, this ordinance in question, without an issue, only applies to the city of Springfield. It doesn't apply to all 3,000 other entities' employees. That, by definition, excludes it from being an IMRF benefit because it only applies to the local employees, not all of them IMRF because police and fire have separate pension systems. So the difficulty with all of this is that they're trying to, the plaintiff's trying to extend that argument to reach things outside of the pension code by making the argument, well, if you promise a person a pay raise or if you do, you know, all of these various things that go into their compensation package or whether it's sick day payouts, vacation payouts, whether it's do you get overtime or do you get compensatory time. That can impact indirectly your pension. And do local bodies try to make decisions that try to be fiscally responsible in relation to what they're doing as it relates to pension, future pension costs? Without a doubt. They're required to do that. Now the new GASB reporting rules for the rules, the accounting rules for when they do the audit every year, now expressly have been changed to highlight future pension liabilities. So this is not something that's going away. This is an incredibly significant problem. And from a city's point of view, the city has to take into account not only what it's paying currently, but what are the implications for the future. And if they're not able to do that, then you've really gone way outside what the Illinois Constitution was talking about, about the pension that the reducing of pension benefit that's as a matter of state law. Because these are not state law matters. These are local matters where a city council or a county board or whatever is trying to decide to fit within the budget. How many people to hire? What can you pay them? What should be our overtime policies? Can we afford to pay vacation at the end to keep people from using it or encourage them not to? Or do we take all of that away because of the costs are such that the taxpayers just can't afford that? So when you drill down to the pure basic argument, the city's view is that this is not something that is derived from the pension code. If you read literally the decisions, every single case that the plaintiff has cited has been a case where there's been an attempt to change the pension code, to change it or change a variable in the code to the detriment of the members, the current members. So is there a difference between changing a variable versus impacting the calculation? I asked opposing counsel, does it change a variable? And he says, yes. The calculation is going to be different. What's your take on that? It does not change the variable at all. What, ma'am, you had asked was does the fact, for example, let's take the salary. Let's just say there's an adjustment in salary. Everybody has to take a 2% pay cut or something of that nature. That changes the input. It doesn't change the variable. That's the distinction right there. The city has no authority to change a variable. You know, the formula itself. Which you plug in. That's exactly right. And, again, that, in my view at least, is what I would call an incidental impact because every single thing the city does incidentally impacts a future pension benefit by virtue of even what salary you pay somebody because it's an input. It's an input. Just as a matter of interest and public policy, when a municipality makes the calculation that this is simply not sustainable, do they immediately change the policy for future hires? You're not affecting their pension if you say to the new employee, we used to have this policy. We don't have it anymore. I want to make sure you understand that when we hire you. Well, policies change. I'm asking if that policy changes. Is that something that a municipality immediately reacts to? I'm not sure they do. I wouldn't be if we're talking about fiscal responsibility. And, again, this is curiosity. I don't know that it would have a bearing on my thought process, but I'm trying to figure out why there's not an acknowledgement. We can't do this. Well, one immediate measure we can take is to tell every new employee, this doesn't apply anymore. And I'm asking, did the city of Springfield do that? Or would it be your understanding of municipal law that that's something that municipalities look at? I would answer it in this way. Any new employee would be subject to the ordinance. But are they instructed in it, like given a notice? I don't think so. In other words, they might be given a sheet that says, you know, here's your salary, here's your sick day, here's your vacation that you earned, and those kind of things. But I don't know that it would highlight specifically that policy. Well, until this case is concluded, you've got two plus years of hires. Yes. That you don't know what you're going to be able to do with. Well, the city is applying the ordinance to everybody affected with the ordinance statement. But if you lose, if you were to lose, those new hires could take the benefit of Mr. Craven prevailing on this case. Whereas they could not if the city said prospectively, in the future, we ain't going to do this anymore. And I'm asking, as a matter of public policy, since you're managing the public fisc, why not do that? Well, if this is something that was an unwise choice earlier or isn't a viable choice anymore, why isn't that done proactively to make sure that it doesn't have to happen in the future, regardless of the outcome of this case? I think that what would end up happening, as a matter of speculation, is I think the plaintiff would argue that it applies to new hires. In other words, I think their view would be, since they weren't hired, that you might ask him on rebuttal, but I think they would say since they weren't hired and the ordinance was applied, they have no right because they weren't members at the time. I'm talking about changing the ordinance. Yes. Or a new ordinance that says future hires shall not have the benefit of this. The city council decided not to do that, make it prospective. That was a legislative decision on the part of the city council that was debated in terms of application of when would this change take effect. They indicated that they set a date, but it was, I'm trying to remember, I believe it was June of this coming year, I think. In other words, there was a waiting time for it. However, that was to give people notice in case people did want to retire. It was a matter of fairness. But they chose not to make it just to apply to new hires. That was a legislative decision. All right. I hope I haven't gotten you too far off track. Again, I think that just very briefly, the key on this issue is whether or not it is a benefit derived from the pension code. The city believes very strongly that if you read the decisions that plaintiff has relied upon, they're all relating to attempts to change the state pension code in some manner that would affect existing members. The city cannot change the RMF pension code. It can't calculate. It can't grant the pension. We're totally independent. IMRF is a state agency. It's a state entity created by state law. So the most that the city can ever do is affect its local employment policies. And it's not always clear when, to try to maybe in a broader way answer, Justice, your question, it's not always clear that when a decision is made ten years ago how it looks ten years later. And so that's the problem that you have here. What was intended, I think, originally as an employment policy has turned out to be not something that makes good public policy sense on an economic level. And so it in no way changed the IMRF pension code. It's only changing any inputs. And ironically, the ordinance that's in place, of course, applies only to city employees, not all the other IMRF pension participants across the state. But it also applies to non-IMRF members. So it's not something in any way that's derived from the existence of the IMRF pension code. And again, I think just very briefly, the concern that the city has and IMRF has is that really when you take literally what the plaintiff is trying to argue, it goes way beyond the accrual of vacation or how they cash out vacation at the end. Because there's sick leave that this impacts, sick days. There's compensatory time that's paid out. There is issues with do they get compensatory time versus overtime. And that, again, IMRF allows for overtime to go into the pension. Police and fire don't. But for IMRF, they do. So all of these factors are inputs. And none of them change the pension calculation, the variable itself. And so that's the reason that the city would respectfully request that the circuit court, the court's decision, the lower court's decision basically be affirmed. And we do not believe that the ordinance is invalid under those decisions. We think it only has an incidental impact. It doesn't change the pension code, IMRF pension code. So thank you very much. Thank you, Mr. Zirkle. Any rebuttal, Mr. Craven? Yes, thank you. Paragraph 41 of the Kenerva decision. Defendants contend that the reach of Article 13, Section 5, is confined to the retirement annuity payments authorized by the pension code. But there is nothing in the text of the Constitution that warrants such a limitation. Just as the legislature is presumed to act with full knowledge of all prior legislation, the drafters of a constitutional provision are presumed to know about existing laws and constitutional provisions and to have drafted their provision accordingly. If they had intended to protect only core pension annuity benefits and to exclude the various other benefits state employees were and are entitled to receive as a result of membership in the state pension systems, the drafters could have so specified. They did not. The text of the provision proposed to and adopted by the voters of the state did not limit its terms to annuities or to benefits conferred directly by the pension code, which would also include disability coverage and survivor benefits. Rather, the drafters chose expansive language that goes beyond annuities and the terms of the pension code, defining the range of protected benefits broadly to encompass those attendant to membership in the state's retirement system. Then, as now, subsidized health care was one of those benefits. For us to hold that such benefits are not among the benefits protected by the Constitution would require us to construe Article 13, Section 5, in a way that the plain language of the provision does not support. We may not rewrite the Pension Protection Clause to include restrictions and limitations that the drafters did not express and the citizens of Illinois did not approve. There is nothing, nothing in Article 13, Section 5, that limits this protection to provisions of the pension code. To answer your question, and I hate to give the state of Illinois any credit on the fiscal front, but that's exactly, your suggestion is exactly what the state of Illinois did with Tier 1 and Tier 2. As of January 1, 2011, if you're hired before January 1, 2011, you get Benefit Structure A. If you're hired after January 1, 2011, you get Benefit Structure B, which includes changes in the calculation of salary as defined in the pension code for purposes of calculation of salary. The element at issue here is the definition of salary and the input into that formula for the calculation of a pension benefit. But Kenerva talks about and analyzes the issue of whether or not the health insurance subsidy qualifies as a benefit of membership, and Mr. Zirkle has made the point to us that that is the real inquiry here. Does this flow from membership in a state pension program? It absolutely does, because you are entitled to, a City of Springfield employee is entitled to a pension under the IMRF based on years of service and salary over a period of time prior to retirement. This changes, this specifically changes, and it was intended to change the calculation of salary, the calculation of that benefit. Not everybody has to do it the same way. As the IMRF brief suggests, every IMRF participating agency can have different rules about vacation pay, holiday pay, overtime pay. It doesn't matter. The contract between the employer and the employee sets that definition of salary, and once that contract is in place, the benefits to the employee can't be diminished, and that's precisely, that's clearly, it's admittedly what the city was attempting to do with this ordinance. They wanted to diminish those pension benefits available to city employees based on the calculation of salary. I would suggest that the power of the city, the ability of the city, in this case, is limited by the constitutional provision. Justice Carmier's decision in in-rate pension litigation, rather eloquently, set out the limitations on legislative bodies as determined by the voters and the citizens in the Constitution. That pension protection clause applies here, and we would ask for a reversal. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess at this time.